Filed 7/15/16  Brandon v. City of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MILAN L. BRANDON, as Trustee of the Milan Brandon Family Trust, | D068296 |
| Plaintiff, Cross-Defendant, and Appellant, | |
| v. | (Super. Ct. No.  37-2013-00067039-CU-EI-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant, Cross-Complainant, and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Freeland McKinley & McKinley, Steven A. McKinley, Karen G. McKinley and Ian W. McKinley for Plaintiff, Cross-Defendant and Appellant.

Jan A. Goldsmith, City Attorney, and Carmen A. Brock, Deputy City Attorney, for Defendant, Cross-Complainant and Respondent.

The Milan Brandon Family Trust (Trust) owns certain real property located in San Diego.  This property is adjacent to Olive Park and has been the site of a medical building

for the last 50 years. Milan L. Brandon, who is currently the trustee of the Trust, entered into a revocable permit agreement (Permit) with the city of San Diego (City) in 1963 before constructing the medical building. Among other things, the Permit allowed Brandon to use a portion of Olive Park for ingress and egress to the medical building. However, the medical building also included underground parking, which was accessible via Third Avenue.

In exchange for using a strip of Olive Park for ingress and egress, Brandon agreed to maintain Olive Park as a public park, including having it landscaped per the City's specifications. In addition, the Permit explicitly stated that the City could revoke the Permit with 60 days' written notice to Brandon.

As part of a City program to increase useable park space in San Diego, the City purchased land near Olive Park and planned to include Olive Park in its new park plan. The City offered to allow Brandon to purchase or lease a portion of Olive Park to provide ingress and egress for his medical building. Brandon declined. Despite using Olive Park for ingress and egress for 50 years without paying taxes on the property or otherwise compensating the City, Brandon took the position that he had an easement over Olive Park. The City disagreed and after a public hearing, revoked the Permit. The City then asked Brandon to remove his improvements on Olive Park. Brandon refused and brought suit against the City for declaratory relief and inverse condemnation and sought a writ of mandate challenging the City's revocation of the Permit.

The City brought a successful motion for summary judgment, and Brandon now appeals the ensuing judgment. In doing so, he contends that he proved a triable issue of

2

material fact exists as to the existence of an easement across Olive Park. In addition, he claims the City improperly revoked the Permit.

We reject Brandon's contentions. We conclude that the undisputed evidence shows that Brandon does not have any interest in Olive Park. Thus, he cannot maintain his declaratory relief or inverse condemnation claims. Also, Brandon's attack on the City's revocation of the Permit lacks merit. As such, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The instant matter concerns a dispute over an 80-foot x 200-foot strip of land over Olive Park. On January 15, 1908, the City vacated a residential street right of way intended for a future extension of Olive Street in the Bankers Hill area of San Diego. On January 20, 1909, the fee title owners to the land underlying the vacated right of way (lots L, A, F, and G of block 325) deeded a portion of the land to the City "in fee simple" subject to a covenant that the land be used for a public park. This land became known as Olive Park. The grantors, whose homes and garages faced Olive Park, continued to access their garages across Olive Park from 1909 to 1963.

Over 50 years later, in 1962, Milan Brandon and Beaver Investment Corporation (Beaver) acquired lots F and G of block 325 (Brandon Property). The Brandon Property is located at 2800 Third Avenue, San Diego, California. The then existing homes on lots F and G, which faced Olive Park, were demolished. The City permitted Brandon to "tie" lots F and G together to construct a large rectangular medical building on the Brandon Property facing Third Avenue. A parking garage, with a driveway opening to Third Avenue, was constructed under the medical building. In June 1963, the City granted an

3

additional zoning variance to allow the medical building to be built on the Brandon Property's southern property line adjacent to Olive Park.

In connection with the construction of the medical building, the City and Brandon entered into the Permit whereby Brandon was to use a strip of land across Olive Park to access the medical building. This was the same route the previous owners of lots F and G used to access their garages. In exchange, Brandon promised to maintain Olive Park as a public park. To this end, Brandon was required to landscape Olive Park in accordance with City approved plans and not convert it to any other use.

The Permit allowed the City to terminate "all privileges given" under the Permit "by simple resolution . . . adopted by the [San Diego] City Council . . . followed by sixty (60) days' written notice of the revocation. . . ."

In 1981, Michal McKee, a relative of one of the original grantors of Olive Park to the City, sued the City in San Diego Superior Court (1981 Action). In that case, McKee alleged Olive Park was not being used as a public park as the original grantors had intended, and therefore, ownership of Olive Park should revert back to the grantors' heirs. After a bench trial, the trial court concluded that the original grantors, by way of a deed recorded on May 14, 1909 (1909 Deed), had conveyed their interest in Olive Park to the City with no reversionary interest under any condition. The court noted the 1909 Deed "effected a severance of" Olive Park "from the contiguous properties of the respective [g]rantors." The court found after the 1909 conveyance of Olive Park, a portion of that property was necessary for ingress and egress to lots F, G, and L and continued to be used for that purpose from 1909 to 1963. The court also observed that Brandon and

4

Beaver entered into the Permit with the City, which did not violate the covenant in the 1909 Deed to use Olive Park for park purposes. The court concluded that the City owned Olive Park in fee simple subject to a covenant that the property be used as a public park.

In the 1981 Action, the trial court entered judgment in favor of the defendants and against McKee. In doing so, the court decreed that McKee "has no right, title or interest in or to" Olive Park. There is no mention in the judgment about Brandon's right, title, or interest in Olive Park.

Almost 30 years after the conclusion of the 1981 Action, the City, at a cost of $1.4 million purchased .34 of an acre of unimproved property adjoining Olive Park. The City bought this property to address the 92.33 acre deficiency in useable park acreage identified in the City's general plan, park and recreation guidelines, and as such, proposed the new community park project.

In preparation for the new community park project, the City's real estate assets department (READ) first offered to sell a small strip of Olive Park adjoining the Brandon Property to Brandon. However, Brandon rejected the offer, claiming he already owned an equitable easement over Olive Park. READ then attempted to lease the strip of land to Brandon for 10 years. Brandon declined the offer, again asserting he already owned access across Olive Park.

On April 4, 2013, READ gave Brandon notice the San Diego City Council (City Council) would be asked to terminate the Permit to allow the City to move forward with the new community park project. READ again offered to lease Brandon a strip of land across Olive Park, but Brandon did not respond. Therefore, on May 1, 2013, the City

gave notice to Brandon that the City Council would hold a hearing to consider the termination of the Permit.

On June 18, 2013, the City Council held a hearing to consider revoking the Permit. Brandon's legal counsel was present and spoke on Brandon's behalf. Numerous members of the public attended and expressed support for the new community park project and for the termination of the Permit, citing the importance of having a neighborhood park in Bankers Hill, the ability to have a view of the Maple Canyon open space area from the park, the abuse of the park by Brandon as a parking lot,[1] and the 50 years of rent free, tax free use of Olive Park Brandon had enjoyed.

The City Council president noted the revocation of the Permit received unanimous support from the City's land use and housing committee as well as the support of the council representative for the Bankers Hill council district. The council noted Olive Park had not been maintained as a park by Brandon as required by the Permit, and also observed all of READ's efforts to present Brandon with "fair options" for ingress and egress use of a strip over Olive Park. Ultimately, the City Council adopted resolution No. 308288, terminating the Permit.

On July 5, 2013, the City notified Brandon that the City Council had terminated the Permit. Under paragraph 8 of the Permit, the City asked Brandon to remove all facilities and improvements from Olive Park within 60 days. Brandon took no action.

---

[1]    Apparently, instead of maintaining Olive Park as a public park as required under the Permit, Brandon never fully landscaped the park, and rather, installed marked parking stalls and used Olive Park as an additional parking lot for the medical building.

Almost two weeks later, the City again notified Brandon access across Olive Park had been permanently revoked, and asked Brandon to leave Olive Park. Brandon refused.

On September 16, 2013, Brandon filed suit in the North County branch of the San Diego Superior Court against the City for declaratory and injunctive relief, alleging that the City engaged in "unreasonable precondemnation conduct." In addition, Brandon sought a writ of mandate challenging the termination of the Permit. The gravamen of Brandon's suit was that he possessed an easement over Olive Park for ingress and egress into the parking structure for the medical building.

Subsequently, Brandon sought and the superior court granted a temporary restraining order (TRO). The TRO prohibited the City from fencing off Olive Park or restricting Brandon's access across Olive Park pending a hearing on Brandon's request for a TRO after the case was transferred to the central district of San Diego Superior Court.

Brandon then filed a first amended complaint, but did not add any additional causes of action. The superior court again granted a TRO consistent with the previous order pending a hearing on Brandon's motion for a preliminary injunction. After the second TRO was granted, the City answered the first amended complaint.

On June 20, 2014, the City certified the administrative record in response to Brandon's petition for writ of mandate. Ten days later, the City moved for summary judgment, or in the alternative, summary adjudication of issues. In doing so, the City argued Brandon's first (declaratory and injunctive relief) and third (inverse condemnation) causes of action lacked merit because Brandon had no interest in Olive Park. In regard to the second cause of action (petition for writ of mandate), the City

7

maintained substantial evidence supported the City Council's decision to revoke the Permit, and the City did not proceed in excess of its jurisdiction.

On September 5, 2014, Brandon filed his opposition to the City's motion for summary judgment. He argued, under a variety of different theories, a triable issue of fact existed as to the existence of an easement over Olive Park, and thus, his first and third causes of action should survive summary judgment. As to his second cause of action, Brandon insisted the administrative record was not properly certified. In addition, he asserted good cause did not exist to revoke the Permit and he was denied due process because his attorney was not given adequate time to present his case at the City Council hearing. As part of his opposition, Brandon objected to some of the evidence the City filed with its motion.

The City filed a reply and related pleadings.

After considering the pleadings, evidence, and hearing oral argument, the superior court granted the City's motion for summary judgment. In doing so, the court found that Brandon had not raised a triable issue of fact as to his interest in Olive Park, and therefore, his first and third causes of action necessarily failed. The court also rejected Brandon's challenge to the City Council's revocation of the Permit, finding the City did not proceed in excess of its jurisdiction and proceeded in a manner required by law, and the decision to revoke the Permit was supported by evidence. The court also overruled Brandon's objections to the City's evidence.

The court entered an interlocutory judgment in the City's favor on November 4, 2014, with final judgment entered on April 2, 2015. Brandon timely appealed.

8

DISCUSSION

I

*STANDARD OF REVIEW*

"A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.)  Further, the pleadings define the issues to be considered on a motion for summary judgment.  (*Sadlier v. Superior Court* (1986) 184 Cal.App.3d 1050, 1055.)

The standard of review for an order granting a motion for summary judgment is de novo.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

In performing our independent review, we apply the same three-step process as the trial court.  "Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.)  As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense.  (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.)  Therefore, a defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements

9

of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc.,[2] § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citations], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

---

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

10

## II

## *THE FIRST AND THIRD CAUSES OF ACTION*

In Brandon's first cause of action, he seeks declaratory and injunctive relief against the City. He claims that an easement exists over Olive Park for the benefit of the Brandon Property, and the City denies that any such easement exists.

Brandon's third cause of action, entitled "unreasonable precondemnation conduct" is actually a claim for inverse condemnation as Brandon is seeking damages for the City improperly taking the alleged easement. (See *Pacific Bell v. City of San Diego* (2000) 81 Cal.App.4th 596, 601-602.)

Both the first and the third causes of action require Brandon to have an interest in Olive Park. Here, according to Brandon, that interest is an easement for the benefit of the Brandon Property that would allow Brandon to use a portion of Olive Park for ingress and egress to the medical building. If there is no triable issue of material fact regarding whether an easement exists, summary adjudication as to the first and third causes of action would be warranted.

Before we evaluate whether the City satisfied its initial burden for its motion as to the first and third causes of action, we find it necessary to point out the unique characteristics of this case. Here, Brandon argues he possesses certain interests and/or property rights in Olive Park that arose from a transfer of that property over 100 years ago. However, those rights (i.e., the existence of an easement) are not present in the 1909 Deed evidencing the transfer. Indeed, the deed is silent as to the existence of any easement. Not surprisingly, there are no witnesses still living who can attest to what

11

occurred or the parties' intention in 1909.  Instead, Brandon relies on the 1981 findings of fact and conclusions of law, and to a lesser extent, the Permit to establish his interest in Olive Park.

In moving for summary judgment, the City also relies on the 1981 findings of fact and conclusions of law as well as the Permit.  Not surprisingly, the parties disagree regarding the correct interpretation of the 1981 findings of fact and conclusions of law and the Permit.

In general, where a trial court has made both findings of fact and conclusions of law, we would review the court's findings of fact for substantial evidence.  (*Westfour Corp. v. California First Bank* (1992) 3 Cal.App.4th 1554, 1558.)  Under that standard, our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below.  (*Morgan v. Imperial Irrigation District* (2014) 223 Cal.App.4th 892, 916.)  However, in this instance, we do not have any record that allows us to ascertain if the trial court's findings of fact are supported by substantial evidence.  We do not have a transcript of the trial of the 1981 Action.  There is no indication in the record what evidence was offered during the trial of the 1981 Action.  At most, the record contains a few of the City's trial briefs as well as the complaint in the 1981 Action.  These documents provide some context for the 1981 findings of fact and conclusions of law, but they do not allow us to engage in a substantial evidence review.  In addition, neither party has pointed us to any appellate court review of the 1981 findings of fact and conclusions of law.

12

Typically, we review the trial court's conclusions of law independently. (*Jenron Corp. v. Department of Social Services* (1997) 54 Cal.App.4th 1429, 1434.) We are able to do so with the legal conclusions contained in the 1981 findings of fact and conclusions of law. In doing so, we will review the findings of fact to evaluate whether, as they are stated, they support the conclusions of law. However, we do so cautiously and do not imply findings or conclusions based on implied findings that are not clearly supported by the actual text of the 1981 findings of fact and conclusions of law as we interpret that text within the context of the 1981 Action.

In regard to the Permit, we treat that similar to a contract and interpret it independently. (Cf. *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 39-40.)

With this explanation regarding how we will interpret the two main sources of evidence for the motion for summary judgment, we now analyze the motion.

The City's motion for summary judgment as to the first and the third cause of action is relatively simple. The City provided evidence (and Brandon does not dispute) that Brandon and the City entered into the Permit. The Permit allowed Brandon to use a portion of Olive Park for ingress and egress to the medical building. The Permit also was revocable by the City with 60 days' written notice to Brandon. After a public hearing, the City revoked the Permit, thereby terminating any rights Brandon had to use Olive Park for ingress and egress. In addition, the City offered evidence that the medical building's underground parking structure was accessible by Third Avenue. We find these factual contentions are supported by evidence in the record.

13

The City, Brandon, and a representative of Beaver signed the Permit in June 1963. The Permit expressly stated that Brandon was to maintain Olive Park as a public park, and in exchange, Brandon could use a portion of Olive Park for the ingress and egress to and from the medical building. The Permit additionally stated that it was revocable at the City's will by way of a simple resolution with 60 days' written notice to Brandon. Moreover, the Permit required Brandon to remove all facilities and improvements made by Brandon upon revocation of the Permit.

In his opening brief, Brandon points out that, per the variance provided by the City, the underground parking garage for the medical building would have direct access to Third Avenue. In Brandon's declaration, he admits that the underground parking can be accessed from Third Avenue.

It is undisputed that the City Council terminated the Permit. As the City's position is that Brandon was only able to access the medical building over Olive Park because of the Permit, when it was revoked, according to the City, Brandon no longer had any right of ingress or egress over the property. Accordingly, we conclude that the City satisfied its initial burden of proof on its motion as to the first and the third causes of action.

Having found that the City satisfied its burden as to the first and third causes of action, we next turn to Brandon's arguments regarding whether he created a triable issue

14

of fact as to his interest in Olive Park.[3]  He contends that he presented evidence creating a triable issue of material fact as to the existence of an implied easement.  We disagree.

"An implied easement may arise when, under certain specific circumstances, the law implies an intent on the part of the parties to a property transaction to create or transfer an easement even though there is no written document indicating such an intent." (*Mikels v. Rager* (1991) 232 Cal.App.3d 334, 357.)  "An easement will be implied when, at the time of conveyance of property, the following conditions exist:  1) the owner of property conveys or transfers a portion of that property to another; 2) the owner's prior existing use of the property was of a nature that the parties must have intended or believed that the use would continue; meaning that the existing use must either have been known to the grantor and the grantee, or have been so obviously and apparently permanent that the parties should have known of the use; and 3) the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement.  [Citation.] 'The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances.'  [Citation.]  An easement by implication will not be found absent clear evidence that it was intended by the parties." (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 141-142, fn. omitted.)

---

3      Brandon begins his argument by claiming the City, as an initial matter, had to prove the existence of a negative:  There was no implied easement.  We disagree.  The City's position is that Brandon was allowed ingress and egress over Olive Park under the Permit, and when the Permit was revoked, Brandon lost any such rights.  As we discuss above, the City carried its burden on this theory.  Of course, Brandon had the opportunity to show a triable issue of facts exists as the existence of an implied easement.

Curiously, Brandon did not provide us with the elements necessary to create an implied easement or otherwise explain how the evidence he presented satisfied the requirements. His failure to do so is fatal to his argument.[4] (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 ["Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "].)

However, even if we were to consider Brandon's claim, on the merits, we would find no triable issue of material fact as to the existence of an implied easement. For example, Brandon claims that evidence shows "the level portion of vacated Olive Street had been used to access the garage of a single family residence located on [his] property continuously before, during, and after the 1908 conveyance." Brandon thus reasons that an implied easement was created in 1909 and existed when he purchased lots F and G in 1962. And as such, that easement exists today. We find several problems with Brandon's conclusion.

As a foundational issue, Brandon's argument hinges on his claim that the trial court in the 1981 Action, as set forth in the 1981 findings of fact and conclusions of law, found the existence of an implied easement. It did not. And there is no indication in the limited record we have that it was asked to do so. The 1981 Action featured McKee

_____

4    In response to the City pointing out that Brandon did not provide the necessary elements to establish an implied easement, Brandon included such authority in his reply brief.

16

suing the City, Brandon, and others based on the claim that Olive Park should revert to him as the heir of one of the original grantors. The court found the City owned Olive Park in fee simple subject to a covenant that the property be used a public park. The court further concluded that there was no breach of the covenant and McKee had no interest in Olive Park. Nowhere in the 1981 findings of fact and conclusions of law did the trial court use the word easement. We will not imply the existence of one based on an incomplete record, especially in light of the fact that the determination of the existence of an easement was not necessary or required to resolve the 1981 Action.

Next, Brandon's own declaration he submitted in opposition to the motion for summary judgment does not establish a triable issue of fact as to the existence of an implied easement. In fact, it undermines the theory that one exists. Brandon declared that when he purchased the Brandon Property, he saw each lot was improved with "an old house and garage, each of which faced south onto" Olive Park. At that time, Brandon stated there was no other access to the garages from any public street. In addition, Brandon stated that he purchased the Brandon Property to build an office building on it. However, Brandon admitted that he was unaware of the existence of any easement across Olive Street when he purchased the Brandon Property. Nowhere in Brandon's declaration does he explicitly state that he believed he had a right to use Olive Park for ingress or egress to the medical building he planned to build.

Also, Brandon's position ignores that the character of lots F and G changed significantly after he purchased them. There are no longer homes on the property with garages facing Olive Street with a path over Olive Park being the only means of ingress

17

and egress to the homes. Instead, the two homes were demolished and the City allowed the two lots to be tied together and a medical building was constructed on property that is now accessible from Third Avenue. Further, by way of the Permit, the City expressly allowed Brandon to use a portion of Olive Park for ingress and egress over Olive Park in exchange for Brandon maintaining Olive Park as a public park. If an easement existed, there was no need to Brandon to enter into the Permit. Indeed, Brandon offers no explanation why he would agree to maintain Olive Park as a public park if he already had an easement on that property.

Brandon also argues that the 1981 findings of fact and conclusions of law collaterally estop the superior court from granting the City's motion for summary judgment. We are not persuaded.

Collateral estoppel precludes relitigation of an issue that was necessarily decided in a prior litigation between the same parties or their privies. (*Edward Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481.) Brandon claims the 1981 Action determined that an easement for ingress and egress over Olive Park existed in his favor. To this end, Brandon relies on the following findings by the trial court, which he claims establishes the existence of an easement that benefits him now:

> "Before, during and after the transaction described in paragraphs 6, 7, 8, and 9 above,[5] the intention of the Grantors and defendant City as to the limitation in the 1909 deed, 'for use as a public park,' was that the westerly approximate one-half or canyon portion of [Olive

5      The subject transaction consisted of the original grantors deeding Olive Street to the City to be used as a public park, and in exchange, the City agreed to close and vacate Olive Street to through traffic.

18

Park] would be used as part of a canyon park and the easterly one-half or street-level portion would continue to provide access to Lot 'F' and Lots 'G' and 'L.' "

Brandon contends that the foregoing established that the original grantors intended to create "an easement of access" that would benefit him as the eventual owner of lots F and G. However, Brandon ignores the very next paragraph of the 1981 findings of fact and conclusions of law wherein the trial court acknowledged that the situation of the original grantors in 1909 changed in 1963. The court found:

"On or about June 11, 1963, defendant City of San Diego, on the one hand, and Beaver Investment Corporation . . . and Milan L. Brandon, on the other, entered into a Revocable Permit Agreement . . . whereby Beaver Investment Corporation and Milan L. Brandon agreed to landscape, develop and maintain [Olive Park] in exchange for the right to use [Olive Park] for ingress and egress to Lots 'F' and 'G' and to a medical building to be constructed thereon . . . ."

Thus, the trial court found that the right to use Olive Park as ingress and egress for the medical building originated in the Permit. It would be inconsistent with finding the existence of an implied easement for the court then to find that the City granted Brandon, by way of the Permit, the right to use Olive Park for ingress and egress to the medical building. Also, we find no language in the 1981 findings of fact and conclusions of law that could be reasonably read to support Brandon's position that the trial court found an implied easement existed.

In short, in the 1981 Action, Brandon and the City did not litigate the possible existence of an implied easement over Olive Park for the benefit of the Brandon Property.

19

Accordingly, the 1981 Action cannot be used by Brandon, as collateral estoppel, to create a triable issue of material fact as to existence of such an easement.[6]

Brandon next argues that there is a triable issue of fact as to whether an abutter's easement exists over Olive Park. To this end, relying on *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150 at page 167 (*Harman*), Brandon maintains "here, lots are laid out on a map showing frontage on streets, a private easement of ingress and egress burdens all public streets in favor of the abutting parcels, and survives closure of the street." He further reasons that because his property abutted Olive Street, a private easement of access survived the street closure. We are not persuaded.

Brandon's reliance on *Harman*, *supra*, 7 Cal.3d 150 is misplaced. Although in that case our high court noted that a private easement of ingress and egress burdens all public streets in favor of the abutting parcels (*id.* at p. 167), the case concerned a taxpayer's claim that San Francisco's method of obtaining appraised values for the purpose of selling certain streets was illegal (*id.* at pp. 155-156). Accordingly, *Harman's* discussion of an abutter's easement is at best dicta, and not particularly helpful dicta, because it does not

---

[6] Brandon insists that two City documents that refer to the existence of an easement create a triable issue of material fact sufficient to overcome the City's motion for summary judgment. The first document is a planning report of the City's Planning Department dated March 29, 1985. In that document, the author states an easement has been granted. This conclusion by itself does not create an easement. Nor does it satisfy any of the elements of establishing an implied easement. The second document is a City memorandum dated December 11, 1992. The author of that memorandum states that his "understanding of legal language is minimal," but then proceeds to interpret a portion of the 1981 findings of fact and conclusions of law that Brandon believes is helpful to his position. We are not bound by this City employee's interpretation of the 1981 findings of fact and conclusions of law.

explain how an abutter's easement would exist here. In the instant matter, Olive Street was closed over 50 years before Brandon bought the Brandon Property. Brandon demolished the houses that existed on the Brandon Property and built a medical building. Moreover, ingress and egress over Olive Park was not necessary as the medical building included underground property that connected directly with Third Avenue.

In addition, Brandon's argument that an abutter's easement exists essentially relies on the existence of an abutter's easement as to the original grantors of Olive Park. There is nothing in the record that established the existence of such an easement.

In short, Brandon has not offered any disputed material fact that would create the possibility of an abutter's easement on the record before us.

Finally, Brandon insists that a triable issue of material fact exists because the covenant to use Olive Street as a public park created an easement for access. An easement creates a nonpossessory right to enter and use land of another. (*Main St. Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1053.) " 'An easement may be created by (1) an express grant, (2) an express reservation, (3) an implied grant, (4) an implied reservation, (5) necessity, (6) prescription, (7) a recorded covenant, (8) dedication, (9) condemnation, (10) estoppel, or (11) a court decision.' " (*Id.* at pp. 1053-1054.) A covenant appearing in a grant deed may be binding and pass to future owners of the property. These covenants are said to "run with the land." (*William Self v. Shahram Sharafi* (2013) 220 Cal.App.4th 483, 488.) To run with the land, a covenant must touch and concern land. The benefits or burdens of this type of covenant pass by implication of law rather than under principles of contract. (*Ibid.*) Here, the covenant to

21

be used as a public park found in the 1909 Deed does not, by its express terms, establish any access easement. However, Brandon argues that the trial court in the 1981 Action interpreted this 1909 Deed covenant to establish an easement for access.

Again, Brandon relies on paragraph 16 of the 1981 findings of fact and conclusions of law. In doing so, he asserts an easement exists because the court found " 'for use as a public park,' was that the westerly approximate one-half or canyon portion of [Olive Park] would be used as part of a canyon park and the easterly one-half or street-level portion would continue to provide access to Lot 'F' and Lots 'G' and 'L.' " Brandon interprets this portion of the findings of fact as conclusively establishing the existence of an easement. In other words, Brandon argues that the court created an equitable easement. We disagree.

We again observe that the word "easement" appears nowhere in the 1981 findings of fact and conclusions of law. Although the absence of that word is not the death knell for Brandon's challenge, we do find the omission of that word telling. The court could have clearly pointed out that an equitable easement existed. It did not. The reason for this omission is evident. The court was not asked to find any such easement. It was not necessary for the determination of the issues presented. As such, we find it difficult to agree with Brandon that the trial court found an equitable easement in the 1981 Action.

In appropriate cases where requirements for traditional easements are not present, California courts have exercised their equity powers to fashion protective interests in land referred to as "equitable easements." (*Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1008.) However, to justify the creation of an equitable easement, three factors must be

22

present: (1) the easement seeker must use and improve property innocently; (2) the party opposing the easement must not suffer irreparable harm by the easement; and (3) the hardship of denying the easement must be greatly disproportionate to the hardship of allowing it. (*Id*. at p. 1009.) Unless all three prerequisites are established, a court lacks the discretion to grant an equitable easement. (*Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19.) Brandon has not shown that the court in the 1981 Action considered or decided the requisite factors to establish an equitable easement for access across Olive Park in favor of Brandon.[7]

In summary, the undisputed evidence shows that, by way of the Permit, Brandon was able to use a strip of Olive Park for ingress and egress to the medical building. Brandon did so for 50 years without paying rent or taxes on that property. The City revoked the Permit. Brandon has not shown that a triable issue of fact exists as to the existence of an easement over Olive Park for the benefit of the Brandon Property. As such, he has no interest in Olive Park and his first cause of action for declaratory relief and his third cause of action for inverse condemnation fail.

III

*THE SECOND CAUSE OF ACTION*

Brandon's second cause of action is for a petition for a writ of mandate. He challenges the City's revocation of the Permit. He alleges the "[City's] decision and

---

[7] It logically follows that Brandon could not do so. Again, in the 1981 Action, the court was not asked to determine the existence of an equitable easement. We find no language in the 1981 findings of fact and conclusions of law that Brandon could offer to show the court made any such determination.

23

resolution revoking the [Permit] was arbitrary, capricious, and in bad faith and was an abuse of discretion because there was no evidence of good cause to revoke the [Permit], and there was no evidence Brandon had not performed [under the Permit], and the only reason for revocation was the desire of [the City] to compel Brandon to pay money in violation of the terms and conditions of the [Permit]."

The court granted summary adjudication of the second cause of action, finding the City: (1) did not proceed in excess of its jurisdiction, (2) proceeded in a manner required by law, and (3) the decision to revoke was supported by the evidence. The court further determined that Brandon offered no evidence or argument that challenged its findings. Brandon claims the trial court erred and the second cause of action should have survived the City's motion. We disagree.

Although brought under the umbrella of a motion for summary judgment, in challenging the second cause of action, the City invoked section 1094.5. Section 1094.5 applies to a petition for a writ of mandate challenging the validity of a final administrative order or decision made by the City. (§ 1094.5, subd. (a).) "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (§ 1094.5, subd. (b).)

In moving for summary adjudication as to the second cause of action, the City maintained that "the evidence in the administrative record . . . clearly demonstrates the

24

City Council neither proceeded in excess of its jurisdiction, nor made findings, nor came to a decision that was not supported by substantial evidence in the [administrative record]." In its memorandum of points and authorities, the City specifically cited section 1094.5 and argued the City: (1) did not proceed in excess of its jurisdiction; (2) the City Council's decision was supported by evidence presented at the hearing; and (3) Brandon was afforded due process.

In opposing the City's motion for summary judgment, Brandon did not take issue with the City's reliance on section 1094.5. Indeed, Brandon, too, relied on that code section in opposing the City's motion. In opposition, Brandon asserted the administrative record was not properly certified, the Permit could only be revoked for good cause, the City did not have good cause to revoke the permit, and he was denied due process.

On appeal, the City asks us to review the superior court's order as to the second cause of action as if we were reviewing a motion under section 1094.5. Put differently, the City maintains our standard of review should be substantial evidence not de novo.

Generally, on appeal of a trial court's denial of a petition for a writ of mandate, an appellate court does not review the trial court's ruling, but the agency's final administrative decision. (*TG Oceanside, L.P. v. City of Oceanside* (2007) 156 Cal.App.4th 1355, 1370.) In reviewing the administrative decision, the appellate court must consider whether substantial evidence supports the agency's conclusion (here, that the Permit should be revoked). (*Ibid.*) Yet, to the extent the agency's decision rests on an application of law, the matter presents a question of law for the court's independent review. (*Ibid.*)

25

In his reply brief here, Brandon contends the City did not bring a proper motion under section 1094.5 to dispose of the second cause of action for petition for a writ of mandate. Relying on *Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281 at page 1292, he then argues that summary adjudication of a petition for a writ of mandate is only available if the moving party establishes that evidence outside of the administrative record disposes of the petition as a matter of law. As such, Brandon contends we must either reverse the judgment as to the second cause of action because the motion (as to the second cause of action) was improperly before the court or analyze the City's motion as to the second cause of action under the de novo summary judgment standard. Implied in Brandon's argument is that there is nothing outside the administrative record on which to grant summary adjudication; therefore, we must reverse the judgment as to the second cause of action.

As to Brandon's argument that the City's challenge of the second cause of action was procedurally improper, we note that Brandon did not raise this issue below. " 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial.' " (*Doers v. Golden*

*Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.)  Brandon's procedural

challenge here thus is forfeited.

In addition, it is clear from the record below that the parties and the court

evaluated the City's motion as to the second cause of action as if the motion was brought

under section 1094.5.  The City clearly relied on section 1094.5.   Brandon did not

dispute the applicability of section 1094.5 as to the second cause of action.  In addition,

although he stated a triable issue of material fact existed as to this second cause of action,

he never explained what that fact was.  Instead, he quibbled about the certification of the

administrative record and made legal arguments based on his interpretation of the Permit

and what occurred at the hearing to revoke the Permit.   And, considering the evidence,

pleadings, and arguments of counsel, the court ultimately found (in respect to the second

cause of action):

> "The evidence before the Court, including the transcript of the City
> Council hearing . . . is sufficient to meet the [City's] burden that the
> City (1) did not proceed in excess of its jurisdiction; (2) that it
> proceeded in the manner required by the law; and (3) the decision to
> revoke was supported by the evidence.  [¶]  In opposing the motion
> as to this cause of action [Brandon] argued that the administrative
> record . . . was not properly certified.  [Brandon], however, fails to
> explain how the [administrative record] . . . [is] inadequate.  [¶]  He
> also argued that the [Permit] was not revocable at will, an argument
> the Court has rejected.  [¶]  And, he contends that the Council failed
> to make any findings that [Brandon] violated any terms or conditions
> of the [Permit].  [Brandon], however, cites to no provision in the
> [Permit] that would require such findings be made prior to revoking
> the [Permit]."

Against this background, we see no reason we would not treat the City's motion

challenging the second cause of action as if it were brought under section 1094.5.  In

27

addition, as we discuss below, even if we were to apply a de novo standard of review, we would conclude that Brandon has not raised a triable issue of material fact as to the second cause of action.

Brandon challenges the City's decision to revoke the Permit on three primary grounds. First, he contends the City could not revoke the Permit without good cause or adequately compensating him. He then reasons that because good cause did not exist and the City did not compensate him, the revocation of the Permit was improper. Second, he claims his due process rights were violated because his attorney was not able to speak for a sufficient period of time at the public hearing regarding the revocation of the Permit. Finally, he insists the City did not present a proper administrative record.

Brandon's first argument relies on an untenable interpretation of the Permit. The Permit expressly states that it is "revocable at the will of the City at any time by a simple resolution to that effect adopted by the City Council of said City, followed by sixty (60) days' written notice of said revocation sent to" Brandon. Ignoring the Permit's clear language, Brandon contends the trial court in the 1981 Action found that the City could only revoke the Permit with good cause.[8] Although Brandon does not point us to the specific language where the court made any such finding, it appears that Brandon interprets the court's statement, "[n]o grounds exist on which to revoke [the Permit]" as

---

[8]     Brandon for the first time in his reply brief argues a license that is "truly revocable at will without cause [is] void for lack of mutuality of obligation." (See *Alameda County v. Ross* (1939) 32 Cal.App.2d 135, 140-141.) We need not address arguments made for the first time in a reply brief. (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894-895, fn. 10.)

an indication the court found the Permit could only be revoked for cause. His interpretation is incorrect, and Brandon again ignores the context of the 1981 Action and the findings of the trial court. In that case, the plaintiff was arguing that Olive Park should revert back to him. For that to occur, the Permit would have had to have been revoked. The trial court merely found that the plaintiff had not proved that any grounds existed for the City to revoke the Permit based on the plaintiff's lawsuit. The court was never asked to determine whether the City could revoke the Permit if it decided to do so. Put differently, the court only found that the plaintiff could not cause the Permit to be revoked. Nothing in the 1981 findings of fact and conclusions of law can be reasonably interpreted as determining that the City could only revoke the Permit for cause.

Similarly, we find nothing in the Permit to support Brandon's conclusion that the City had to compensate him for the improvements he made before the City could revoke the Permit. Here, Brandon argues that he acted in good faith under the terms of the Permit and constructed valuable improvements on the property making it unjust for the City to revoke the Permit without fully compensating him for his loss and expenditure of money. (*Belmont County Water District v. State of California* (1976) 65 Cal.App.3d 13, 17.) We disagree. Even putting aside the clear language in the Permit that the City could revoke it at will, this is not a case where an injustice occurred when the City revoked the Permit. Brandon received the benefit of the Permit for 50 years. He used a portion of Olive Park for ingress and egress during that period without paying taxes or rent on the property. Moreover, there is evidence in the record that Brandon did not comply with the Permit in maintaining Olive Park as a public park, but instead, turned a portion of it into a

29

paved parking lot in violation of the Permit.  Under these circumstances, we determine as a matter of law that Brandon could not show that the City's revocation of the Permit worked any fraud or injustice upon Brandon.  (*Cooke v. Ramponi* (1952) 38 Cal.2d 282, 286; *Belmont County Water District*, *supra*, at pp. 17-18.)

We also are not impressed by Brandon's claim he was denied his due process rights when his attorney was not permitted to speak for a longer period of time at the public hearing on the revocation of the Permit.  The record shows that the City gave notice on May 1, 2013, that the City Council would hold a hearing to consider the termination of the Permit.  The matter was then docketed for City Council action.  In response to the City's notice, Brandon's counsel sent the City a five-page letter detailing why he believed the City could not revoke the Permit and threatening to bring suit if the City did revoke it.  Brandon's counsel also addressed the City Council at the public hearing.  Before he spoke, the City Council informed him he had three minutes to speak.  There is no indication that any other public speaker received more time, and Brandon's counsel did not take issue with the time limit at that time.  After his three minutes expired, the City Council provided Brandon with an additional 30 seconds to finish his comments.  In addition, the City Council told Brandon's counsel that if he could find someone who would cede his or her time to him then the City Council would accommodate him.  However, when Brandon's counsel's additional 30 seconds expired, he did not object.  Now, on appeal, Brandon insists that his counsel was entitled to cross-examine witnesses and speak for an additional amount of time to address "the many evidentiary and legal issues presented by the underlying facts."  However, he has

30

provided us with no authority to support his position that he is entitled to such accommodations at a City Council hearing to revoke a permit that is revocable at will by the City. In this case, it is evident that the City Council considered all public comment, made findings, and unanimously voted to terminate the revocable permit. There was no due process violation.

Brandon's final challenge to the court's grant of summary adjudication as to the second cause of action is a technical one. He urges us to find the superior court erred because the City did not present a valid administrative record, and thus, summary adjudication was improper. To support his position, Brandon observes that the individual who authenticated the administrative record declared that she gathered and labeled documents "of City records relating to this litigation." Consequently, Brandon claims the administrative record is not valid because it can only contain documents considered by the City Council in reaching its decision. Brandon's position is somewhat spurious.

Brandon's primary attack on the revocation of the Permit is that the City was not able to revoke it without cause or compensation. As we discuss above, Brandon's argument is based on flawed interpretations of the Permit and the 1981 findings of fact and conclusions of law. As such, the content of the administrative record plays no role in this challenge.

In addition, Brandon's claim that he was denied due process requires only an analysis of the hearing transcript, which is contained in the record and cited to and relied upon by Brandon in his opening brief. Such a transcript is part of an administrative record. (§ 1094.6, subd. (c).) Brandon does not argue that the transcript should not have

31

been included in the purported administrative record or that it does not correctly reflect what occurred at the hearing. Accordingly, his claim that the administrative record is not valid does not impact his due process claim.

We also observe that Brandon does not indicate what documents, if any, should not have been included in the purported administrative record. He does not claim that documents have been omitted. He does not explain how he has been prejudiced. Indeed, his argument is little more than a challenge to the verbiage used by the declarant authenticating the administrative record. Such a hypertechnical challenge does not warrant a reversal on the record before us.

Contrary to Brandon's assertions, the record shows that the City acted properly in revoking the Permit. At the June 18, 2013 City Council meeting, City staff presented a slide presentation to the City Council and responded to council questions. Numerous members of the public expressed support for the termination of the Permit for the new community park project, citing the importance of having a neighborhood park in Bankers Hill and the ability to have a view of the Maple Canyon open space area from the park. The abuse of the park by Brandon as a parking lot was debated by the public, as was the 50 years of rent free, tax free use of Olive Park Brandon had enjoyed.

The City Council president presented evidence the termination of the Permit had been considered by the City's land use and housing committee and had the committee's and his support as council representative for Bankers Hill. He also noted Olive Park had not been maintained as a park by Brandon as required by the Permit, and observed the City staff's efforts to present Brandon with "fair options" were unsuccessful. The council

president further noted Bankers Hill is very densely populated and is in need of additional park space, with only two parks in the entire uptown area of the City.

Another council member echoed the council president's concerns, and noted there had been a failure by Brandon to adhere to his responsibility to maintain Olive Park as a park.

A different council member pointed out that as former member of the parks and recreation board, he had firsthand knowledge that new parks and open space are critically important, but difficult to achieve, in the inner city. Therefore, when a rare opportunity to secure additional park land arises, like here, the opportunity must be captured for the good of the community.

We are satisfied that the record demonstrates the City Council's decision to revoke the Permit was supported by findings, and the findings were supported by the evidence. The council's unanimous decision to terminate the Permit was in support of the public good and was not an abuse of discretion.[9] The superior court did not err in granting summary adjudication as to the second cause of action.

---

[9] Even if we applied the summary judgment de novo standard of review, we would conclude that Brandon has not raised a triable issue of material fact to allow the second cause of action to survive the City's motion. As we discuss above, we find no support in the record for Brandon's petition for writ of mandate. In addition, none of his legal theories challenging the revocation of the Permit has merit.

33

## IV

### *BRANDON'S OBJECTIONS TO EVIDENCE*

Although a review of a judgment following the granting of a summary judgment requires an independent review, "[a] different analysis is required for our review of the trial court's . . . rulings on evidentiary objections. Although it is often said that an appellate court reviews a summary judgment motion 'de novo,' the weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard." (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) This standard is guided by various principles set out in the case law: " '[T]he appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.' . . . Other cases suggest that a court abuses its discretion only when its ruling is arbitrary, whimsical, or capricious." (*Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1218.)

Here, Brandon claims the superior court abused its discretion by overruling his objections to the City's evidence submitted in support of its motion for summary judgment. Specifically, he challenges the court's ruling on his objection to a preliminary title report. He argues that the City offered the preliminary title report to show the existence of title to the Brandon Property. The preliminary title report contains a legal description of the Brandon Property that specifically excepts "all of closed Olive Street adjacent to said lots."

34

Brandon argues the title report is hearsay and should not have been admitted. Unfortunately, Brandon fails to cite to the record where the title report is located. Nor does he indicate what portion of the City's motion the preliminary title report related to. As such, Brandon has not presented us with a sufficient basis on which to evaluate his objection. Further, as no party has made any argument based on the preliminary title report, we view Brandon's argument as to this objection moot.[10]

Next, Brandon argues the court erred in overruling his objection to the entire administrative record. We rejected this contention in discussing the second cause of action above.

Finally, Brandon claims the superior court erred in overruling his objection to all the evidence the City submitted in support of its motion for summary judgment because none of the evidence was properly authenticated. Although we do not discount the importance of correctly authenticating evidence used in a motion for summary judgment, we again conclude Brandon's challenge is moot. The instant matter is unique in the sense that almost all the arguments made by the City and Brandon involve three pieces of evidence: The Permit, the 1981 findings of fact and conclusions of law, and the transcript of the City Council hearing. In Brandon's opening brief, he cites repeatedly to

---

[10] The City points out that the legal description of the Brandon Property contained in the preliminary title report is identical to the legal description contained in a quitclaim deed dated June 1, 2011, transferring Brandon's and his wife's interest in the Brandon Property from themselves in their individual capacities to themselves as trustees of the Trust. The superior court granted the City's request to take judicial notice of the quitclaim deed. Brandon did not challenge the grant of judicial notice. For this reason as well, we find Brandon's argument moot.

this evidence.  He does not take the position that the hearing transcript did not accurately reflect what occurred at the hearing.  And he requested the superior court take judicial notice of the 1981 findings of fact and conclusions of law as well as the Permit.  The court granted his request. Against this backdrop, there is no reason to reverse the superior court's judgment because the City allegedly did not adequately authenticate certain evidence when that evidence does not factor into our analysis here.

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on this appeal.


_____

HUFFMAN, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

O'ROURKE, J.