[Civ. No. 19224.   First Dist., Div. Two.   Nov. 21, 1960.]

IRA M. HIGGINS et al., Respondents, v. NICK
KADJEVICH, Appellant.

Eustice & Feeley for Appellant.

Cottrell, Hofvendahl, Roessler & Whitney and R. L. Hofvendahl for Respondents.

KAUFMAN, P. J.—Defendant appeals from a judgment decreeing plaintiffs have an irrevocable license to transport water through the existing irrigation pipeline on defendant's land and enjoining defendant from interfering in any manner with the plaintiffs' use and enjoyment thereof.

The trial court found the following facts: The plaintiffs, I. M. and E. Higgins, N. and F. Laznibat, are the owners in fee of certain parcels of real property on Grant Road near the intersection of Grant Road and Sladky Avenue in Los Altos. The defendant, Kadjevich, also owns real property on Grant Road near that of the plaintiffs; on defendant's land there is a well and pipeline with the necessary gates and valves. The plaintiffs and defendant used the pipeline from 1931 until 1956, under a written agreement, which terminated in the spring of 1956. Since the termination of the written agreement, the plaintiffs and the defendant have continued to use the pipeline for the purpose of conveying irrigation water to the premises of both parties.

In 1955, plaintiff, Ira M. Higgins, and defendant, Nick Kadjevich, entered into an oral agreement to construct an extension of the existing pipeline running to the well on the Higgins property. The agreement also provided that Nick Kadjevich would have the first right to the water from the Higgins well after Higgins and that Higgins would have the first right to water from the Kadjevich well after Kadjevich, and that the existing pipeline and the extension would provide the means of transporting the irrigation water.

Plaintiff, Ira M. Higgins, in reliance on the oral agreement, constructed the extension at his sole expense, in the approximate amount of $1,000. After the construction of the extension, both parties used the pipeline and extension as agreed. The parties used the pipeline and control valves during the

irrigation season of 1957 and 1958. The pipeline and its control valves have been continuously relied upon by the plaintiffs to irrigate their valuable prune and apricot trees. Plaintiffs have no other practical method of irrigating their premises, and if cut off from the pipeline, plaintiffs could not as a practical matter, irrigate their orchards.

The defendant, Kadjevich, has prevented the flow of water through the pipeline. This interference with the flow of irrigation water caused a delay in propping the limbs of the bearing fruit trees in the orchard of plaintiffs, Ira M. Higgins and Elise Higgins, and proximately caused damages in the amount of $1,000. The trial court further found that each of the parties owns the pipeline which lies on his respective property and each has the right to transport water through the entire pipeline without interference by any other party.

From the above, the trial court concluded that the plaintiffs had an irrevocable license to transport water through the existing irrigation pipeline on the defendant's land and permanently enjoined the defendant from interfering with the exercise of this right by the plaintiffs. The court also awarded damages in the sum of $1,000 to Ira M. and Elise Higgins and denied relief on the cross-complaint.

On appeal, it is argued that: (1) The evidence does not support the findings; (2) the findings do not support the judgment in favor of the plaintiffs, Laznibat; (3) that the parol agreement was void for vagueness and violated the statute of frauds, or at most was an agreement between the parties to sell surplus waters to each other; and (4) that the trial court erred in denying judgment on the cross-complaint.

There is no merit in any of these arguments. ▮▮▮ There appears to be ample evidence in support of the findings and judgment. The uncontroverted evidence showed that on April 23, 1931, the plaintiffs, or their predecessor in interest, and the defendant entered into a written agreement for the construction of a well to supply irrigation water for their respective acreages, as "Grant Road Water Company"; the well was to be constructed on the Kadjevich property; the directors were to establish the rate per hour for the use of the water and all moneys received by the water company were to be used for the running and maintenance of the well, with any surplus distributed to the parties in proportion to their acreages; the agreement was to remain in force not exceeding 25 years, and that on termination, all the rights in the well would revert to Kadjevich. In 1933, the owners of

the Grant Road Water Company were given an easement to convey water across land then owned by Symons, a portion of which is now owned by Higgins. In 1955, before the expiration of the Grant Road Water Company agreement, Higgins, at his own expense, constructed a connecting pipeline from the well on his property to the termination point of the pipeline of the Grant Road Water Company on the Jelavich property. Kadjevich helped Higgins build this extension by hauling pipe in his truck from Tracy. Higgins testified that at this time, he and Kadjevich made the oral agreement as found by the trial court. All conflicting inferences in the evidence as to the existence and terms of this agreement were properly resolved by the trial court.

There was also conflicting evidence as to the disposition of the pipelines when the Grant Road Water Company was dissolved in 1956. One witness testified that at the dissolution of the water company, no reference was made to the pipeline; another, that the pipeline belonged to ''each individual ownership whose land it passes''; a third, that all the parties agreed that the pipeline would stay as it was and all the parties were to use it whenever they wanted to do so. Higgins testified that before the termination of the written agreement, every owner entered into an oral agreement for the continued use of the line.

The uncontroverted evidence showed in 1956 when Higgins first used the newly constructed extension pipeline, Kadjevich made no objection; that in 1956, several of the parties obtained water from the pipeline, but in the dry year of 1957, only Higgins and Kadjevich got water; and that in 1958 and 1959 Kadjevich interfered with the flow of irrigation water to the Higgins orchard.

It is further argued that the evidence does not support the judgment as to the plaintiffs Laznibat. There is no merit in this argument as there was evidence that all of the owners orally agreed to the continued use of the line and there was evidence that the defendant had and could also interfere with the irrigation of the Laznibat orchard.

As to the trial court's finding that the plaintiffs had an irrevocable license to transport water through the existing pipeline on the defendant's land, it has long been the law in this state that: ''. . . where a licensee has entered under a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands

of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for. . . ." (*Stoner* v. *Zucker*, 148 Cal. 516, 520 [83 P. 808, 113 Am.St. Rep. 301, 7 Ann. Cas. 704].) The court pointed out that ". . . In the case of irrigating ditches, drains, and the like, the license becomes in all essentials an easement, continuing for such length of time under the indicated conditions as the use itself may continue." (P. 520.)

In recently applying the above-mentioned principle, our Supreme Court said : ". . . The principal basis for this view is the doctrine of equitable estoppel; the license, similar in its essentials to an easement, is declared to be irrevocable to prevent the licensor from perpetrating a fraud upon the licensee. . . ." (*Cooke* v. *Ramponi*, 38 Cal.2d 282, at 286 [239 P.2d 638].)

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 21, 1960.