[Civ. No. 38352. First Dist., Div. Two. Dec. 20, 1976.]

BELMONT COUNTY WATER DISTRICT, Plaintiff and Appellant, v. THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Wilson, Jones, Morton & Lynch, Thomas B. Adams and Thomas S. Owen for Plaintiff and Appellant.

Harry S. Fenton, John P. Horgan, Robert J. DeFea, Thomas R. Williamson and David W. Robison for Defendant and Respondent.

OPINION

KANE, J.—Plaintiff Belmont County Water District (District) appeals from the trial court's judgment denying relief in an action seeking damages for inverse condemnation.

The summarized facts reveal that on or about June 21, 1966, the City and County of San Francisco (City) granted appellant a revocable permit for the purpose of constructing on certain lands belonging to the City a vertical offset shaft and a pipeline leading from said offset shaft to appellant's terminal water storage facilities (hereinafter reservoirs). The objective of the project was to connect the shaft and reservoirs with the large underground tunnel which brings Hetch-Hetchy water to the City from the Sierra-Nevada mountains and thereby to provide a secondary water supply for the District. In reliance on the permit, in 1968 appellant installed an offset shaft in the tunnel, performed route surveys, and prepared partial plans for the laying of the pipeline.

On or about January 15, 1969, subsequent to the issuance of the revocable permit, but prior to the actual construction of the pipeline, the City granted respondent State of California a scenic and recreational easement over a long stretch of land including the parcels where appellant's facilities were located. The primary goal of the grant of easement was to facilitate the construction of the Junipero Serra Freeway (Interstate Highway 280).

The facts, further disclose that as a consequence of the freeway construction the pipeline could not be built as originally planned. Although its length remained virtually the same, the pipeline had to be relocated, which resulted in an increase in construction cost. Thus, it was shown at the trial that due to terrain changes appellant had to use the more costly welded steel pipe instead of ductile iron pipe; that because of the steep slopes erosion control devices had to be built along the pipeline; and also that protective casing had to be installed for that portion of the pipeline which traversed the freeway. The parties stipulated that the increased cost stemming from the aforestated changes amounted to $49,791.63.

After receiving oral and documentary evidence, the trial court sitting without a jury found that appellant failed to prove that the permit was irrevocable and concluded that a permit which is revocable at the will of the grantor does not create an interest in real property which is compensable in a condemnation or an inverse condemnation action. Accordingly, the trial court held respondent not liable for the extra costs under the doctrine of inverse condemnation.

In seeking reversal, appellant launches a two-pronged attack against the trial court's judgment. First, it contends that a permit revocable when

granted becomes irrevocable where, as here, the permittee makes substantial expenditures for permanent improvements in reliance on the permit. In such an instance, continues appellant, the permit or license is transmuted by way of equitable estoppel into an interest in the land which is compensable in a condemnation or inverse condemnation action (*Stoner* v. *Zucker* (1906) 148 Cal. 516 [83 P. 808]; *Hammond* v. *Mustard* (1967) 257 Cal.App.2d 384 [64 Cal.Rptr. 829]; *Higgins* v. *Kadjevich* (1960) 186 Cal.App.2d 520 [9 Cal.Rptr. 115]; *Eastman* v. *Piper* (1924) 68 Cal.App. 554 [229 P. 1002]; 53 C.J.S., Licenses, § 79, pp. 806-807; see also *State of California* ex rel. *Dept. of Water Resources* v. *Texaco, Inc.* (1972) 25 Cal.App.3d 514 [101 Cal.Rptr. 923]). In the alternative, appellant maintains that even if the permit has not become irrevocable, it still represents a valuable right which, under the modern trend of cases, ought to be compensated in eminent domain proceedings (*County of San Diego* v. *Miller* (1975) 13 Cal.3d 684 [119 Cal.Rptr. 491, 532 P.2d 139]; *Southern Cal. Edison Co.* v. *Bourgerie* (1973) 9 Cal.3d 169 [107 Cal.Rptr. 76, 507 P.2d 964]). For the reasons which follow, we are constrained to reject both contentions of appellant and affirm the judgment.

■ *Equitable Estoppel*: In connection with appellant's first argument, we emphasize that under well recognized general rules a license is a personal, revocable and unassignable privilege conferred either by writing or parol to do one or more acts on the land without possessing any interest therein. A license by deed or parol is by definition revocable at the pleasure of the licensor and is generally not compensable in a condemnation proceeding (*State of California* ex rel. *Dept. of Water Resources* v. *Texaco, Inc., supra,* at p. 517; *People* ex rel. *Dept. Pub. Wks.* v. *Lundy* (1965) 238 Cal.App.2d 354, 358 [47 Cal.Rptr. 694]; *Eastman* v. *Piper, supra,* at p. 560; *Gravelly Ford Co.* v. *Pope-Talbot Co.* (1918) 36 Cal.App. 717, 737 [178 P. 155]; see also *Acton* v. *United States* (9th Cir. 1968) 401 F.2d 896).

■ To the general rule, however, there is an exception. As the court put it in *County of Alameda* v. *Ross* (1939) 32 Cal.App.2d 135, 141 [89 P.2d 460]: "Under certain circumstances a license which is ordinarily revocable at will may become irrevocable by the licensor, when the licensee, acting in good faith under the terms of the instrument, *constructs valuable improvements* on the property, making it unjust to permit the cancellation without first fully compensating the licensee for his loss and expenditure of money" (italics added). The cases underline that the exception thus stated is predicated on the doctrine of equitable

estoppel and its primary purpose is to prevent the revocation of the license when the licensee has made *substantial expenditures in reasonable reliance upon the representations by the licensor* with respect to the duration of the license and when the permission of revocation would work fraud or injustice upon the licensee (*Cooke* v. *Ramponi* (1952) 38 Cal.2d 282, 286 [239 P.2d 638]; *Higgins* v. *Kadjevich, supra,* at p. 524; *Gravelly Ford Co.* v. *Pope-Talbot Co., supra*; Rest., Property, § 519, subd. (4)[1]).

■ An analytical review of the record persuades us that appellant failed to establish the crucial elements of equitable estoppel and thus fell short of bringing itself within the aforestated exception. In so concluding, initially we underscore that the substantial expenditures upon which appellant purports to rest its equitable right had been made not on the pipeline, the subject matter of the present lawsuit, but rather on the construction of the offset shaft and the two reservoirs which, according to the undisputed evidence, were neither damaged nor in any other way affected by the building of the freeway and the relocation of the pipeline. It must also be noted that at the time of the freeway construction the pipeline was not actually laid down, but existed only on appellant's plans or drawings. All this leads to the inescapable conclusion that when the relocation was ordered the pipeline provisions of the permit were merely executory; and, contrary to appellant's sweeping claim of vast expenditures, the sum spent on the pipeline itself amounted to no more than the comparatively insubstantial costs made for the preparation of partial plans and route surveys.

At the same time the record fails to show that in making the claimed expenditure appellant acted in *reasonable* reliance on the infinite duration of the permit. In this context, it bears emphasis that the permit granted by the City bore the black-letter title "REVOCABLE PERMIT" and in its dispositive part explicitly provided that "*This grant of permission* does not constitute a deed or grant of an easement by the City, is not transferable or assignable, and *is revocable at any time at the will of the Public Utilities Commission.*" (¶ 2; italics added.) It is true that appellant introduced extrinsic evidence at the trial to demonstrate that the City had never revoked such a permit before. This evidence, however, created

---

[1]Providing for revocation of licenses, section 519, subdivision (4), of the Restatement of Property sets out that "*A licensee* under such a license as is described in § 514 *who has made expenditures* of capital or labor in the exercise of his license *in reasonable reliance upon representations by the licensor as to the duration of the license,* is privileged to continue the use permitted by the license to the extent reasonably necessary to realize upon his expenditures." (Italics added.)

no more than a conflict in the evidence which was resolved in respondent's favor by the trial court.[2] In light of the unequivocal language of the instrument making the permit revocable at will at any time, and the record as a whole, we certainly cannot say that the finding of the trial court is not supported by substantial evidence.

But quite apart from the foregoing deduction, there is another independent reason why appellant's claim for compensation must be rejected. ▉ It has been long settled that in a condemnation or inverse condemnation action[3] licenses and privileges which are unenforceable against the fee owner are not proper subjects of condemnation (*People* ex rel. *Dept. Pub. Wks.* v. *Lundy, supra;* see also *Placer County Water Agency* v. *Jonas* (1969) 275 Cal.App.2d 691, 695 [80 Cal.Rptr. 252]; *State of California* ex rel. *Dept. of Water Resources* v. *Texaco, Inc., supra,* at p. 517).

▉ The record here shows that the permit at issue was not only revocable, but also conditional. One of the conditions explicitly exempted the City from any liability for any damages caused to the permittee's property. The other condition provided that the permittee could not interfere with any use of the land by the City, and if any property or structure erected by the permittee would interfere with such usage, the permittee was bound to alter or remove the same at his own expense.[4]

---

[2] The trial court found that "Plaintiff has failed to establish by a preponderance of the evidence that the parties to the Revocable Permit—to wit, plaintiff and the City and County of San Francisco—intended said permit to be irrevocable. Rather, *the evidence shows that said permit is intended to be revocable at the will of the grantor*, the City and County of San Francisco." (Italics added.) Implicit in this finding is the further determination that appellant was not justified in relying on the irrevocability of the permit.

[3] An inverse condemnation action is an eminent domain proceeding initiated by the property owner rather than the condemner, and the principles which affect the parties' rights in an inverse condemnation suit are the same as those in an eminent domain action (*Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1 [39 Cal.Rptr. 903, 394 P.2d 719]).

[4] The pertinent part of the permit reads as follows: "This permit is granted subject to the following conditions:

"4. *Neither the City, nor any* Commission, Board or *officer thereof shall be held responsible* or liable *for damage to any property of the permittee* installed or located on the properties covered by this permit *from any cause whatsoever....*

"6. *The permittee shall,* on receipt of notice so to do and within such reasonable time limits as may be fixed by said notice, *alter or remove at the expense of said permittee any property or structures* covered by this permit *to such extent as may be necessary to avoid interference* with any pipe, pipe lines, power lines or other structures now or hereafter to be constructed by the City, or with any operations of the City or *with any use by the City of the land affected hereby* or, if so agreed by the General Manager and Chief Engineer of the San Francisco Water Department and the permittee, the permittee may pay to the City the amount of any expense to which the City may be put as a result of such interference." (Italics added.)

It is unarguable that the granting of the scenic and recreational easement to respondent for road construction purposes constituted "use" of the land by the City within the meaning of the provisions of the permit. It follows that had appellant laid down the pipeline prior to the construction of the freeway, under the revocable and conditional permit the City, the fee owner of the land, could have demanded the removal and/or relocation of the pipeline at appellant's expense, and appellant would not have had any claim against the City for compensation. A fortiori, appellant may not raise any demand or claim against the City for a lesser expense stemming from the relocation of the pipeline which existed only on the drawing board. In short, since appellant gained no enforceable right against the City, under the principles stated above, it may not assert the same against respondent either.

*Valuable Right Theory*: Appellant's alternative theory is principally premised on *County of San Diego* v. *Miller, supra.* In that case our Supreme Court expressed the view that the property-contract labeling process is not necessarily determinative in questions of due process compensation. Instead, compensation issues should be decided on considerations of fairness and public policy. ██ Consequently, said the court, the right to compensation is to be determined by whether *the condemnation has deprived the claimant of a valuable right* rather than by whether his right can technically be called an " ' "estate" ' " or " ' "interest" in the land.' " (*County of San Diego* v. *Miller, supra,* at p. 691; see also *United States* v. *Fuller* (1973) 409 U.S. 488, 490 [35 L.Ed.2d 16, 19-20, 93 S.Ct. 801]; *Southern Cal. Edison Co.* v. *Bourgerie, supra,* at pp. 173-175.) Appellant insists that the permit, even if revocable, constitutes a valuable right within the meaning of the aforestated rule and is therefore compensable in an inverse condemnation action. Appellant's argument is unacceptable for two major reasons.

One, as pointed out earlier, appellant's right under the permit was not only revocable, but also conditional. According to the conditions set out in the permit, appellant was not authorized to interfere in any fashion with the landowner's use of the property. However, the grant of scenic easement for freeway construction purposes constituted a new use of the land by the City with which the original location of the pipeline would obviously have interfered. Under these circumstances, we cannot but conclude that the scenic easement superseded the original terms of the permit as far as the location of the pipeline was concerned, and as a consequence appellant may not claim to have possessed a compensable valuable right with respect to the original location of the pipeline.

Appellant's contention that it was entitled to compensation because the instrument granting the scenic easement explicitly reserved the rights of licensees and permittees requires just a brief reply. The provisions of the instrument clearly indicate that only those rights were preserved to the permittees or licensees that were in existence at the time of the recordation of the document.[5] As illustrated before, at the time of the recordation of the scenic easement appellant had no compensable rights under the permit; therefore there was nothing to be preserved.

Two, appellant's claim is not supported by equitable or public policy considerations either. On the one hand, it appears that appellant secured the permit at issue without giving any consideration to the City. Appellant took full advantage of the free permit by building the offset shaft, the reservoirs and the pipeline on the City's land, and thereby obtained access to a second water supply. In addition, the costly investments made on the principal objects (the shaft and reservoirs) indisputably were not affected by the relocation of the pipeline. On the other hand, the record indicates that the relocation of the freeway which, in turn, necessitated the modification of the location of the pipeline, had taken place upon the demand of the City, the fee owner of the land, and also that the requested transfer of the freeway had cost substantial extra expense to respondent. In acknowledgement of the significant additional expenditures to be incurred by respondent, the City gave assurance that "the *right of way for the aforesaid relocation shall be furnished without cost to the State of California as partial consideration for said relocation* . . . ." (Italics added.)

From the viewpoint of equity, the importance of this latter clause can hardly be overstated. It is manifestly clear that if we should accede to appellant's claim and order compensation for the increased construction cost of the pipeline, respondent would have a right of indemnification against the City under the cited clause of the easement instrument. This, in turn, would totally defeat both the spirit and letter of the permit which granted merely a revocable, conditional right to appellant while exempting the City from any liability for damages caused to appellant by any reason whatsoever.

---

[5]Paragraph 8, subdivision b, of the instrument provides in part that "*Nothing herein shall be deemed to nullify,* supersede or affect *any* unrecorded lien, encumbrance, *rights* or other interest in the lands described herein *which was in existence at the time of the recordation of this instrument.*" (Italics added.)

We are persuaded that the cases cited by appellant are inapplicable to the instant situation and do not compel a different result. One line of cases referred to by appellant involves an attempted revocation of the license after the licensee made substantial investments or expenditures on the property in reliance on the license which, as a matter of longstanding conventional rules plainly calls for the invocation of equitable estoppel in order to prevent fraud or injustice (i.e., *Miller and Lux* v. *Kern County etc. Co.* (1908) 154 Cal. 785 [99 P. 179]; *Stoner* v. *Zucker*; *Hammond* v. *Mustard*; *Higgins* v. *Kadjevich*; *Gravelly Ford Co.* v. *Pope-Talbot Co.,* all *supra*). By contrast, in the case at bench appellant patently failed to establish the requisite elements of equitable estoppel and also the case does not involve the revocation of license.

The other line of cases deals with vested irrevocable rights, not incipient or conditional privileges which fail to materialize or are superseded by subsequent events. Thus, in *County of San Diego* v. *Miller, supra,* the unexercised option to purchase real property was held compensable in an eminent domain action, because as the court pointed out, the right of option creates a cloud on the optionor's title, is generally assignable, may be exercised also against the successors of the optionor and, even more importantly, because for the period agreed upon by the parties the option is irrevocable by the optionor (p. 688). In *Southern Cal. Edison Co.* v. *Bourgerie, supra,* the building restrictions were found to be compensable under article I, section 14, of the California Constitution because they were established by a valid deed and qualified as "property" within the meaning of the cited constitutional provisions.

Finally, we observe that *State of Arizona, Arizona Highway Dept.* v. *United States* (1974) 494 F.2d 1285 [204 Ct.Cl. 171] also relates to a different factual situation and is ipso facto inapplicable to the case at bench. In contrast with the situation here present, in *State of Arizona* the state government voluntarily agreed to compensate El Paso Natural Gas Co., a licensee, for the cost of the relocation of its pipelines necessitated by the construction of a highway. The issue there was whether the state should be reimbursed by the federal government for the expenditures made to El Paso, and was decided upon a specific federal statute and an agreement between the federal and state governments. While it is plain that *State of Arizona, Arizona Highway Dept.* v. *United States, supra,* is not controlling here, it is worthy to note that relying on *United States* v. *Fuller, supra,* the Court of Claims underlined that "the expectation of continued enjoyment of a revocable license is not mandated by the Fifth

Amendment as an element of damage for an eminent domain taking." (P. 1288.)

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied January 19, 1977.