Filed 6/28/23; Certified for Publication 7/26/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| 640 OCTAVIA, LLC,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>KARL HEINZ PIEPER et al.,<br><br>     Defendants and Appellants. | A164531<br><br>(San Francisco County<br>Super. Ct. No. CUD-21-667662) |

The trial court granted plaintiff landlord 640 Octavia, LLC's (640 Octavia) summary judgment motion in this unlawful retainer action under the Ellis Act (Gov. Code, § 7060 et seq.). Tenants Karl Pieper and Jose Montoya argue that the trial court (1) improperly sustained 640 Octavia's objections to evidence relating to the landlord's lack of intent to withdraw its property from the residential rental market, and (2) "improperly discounted" other evidence it did consider, relating to the landlord's failure to strictly comply with the Ellis Act. We disagree and affirm.

**BACKGROUND**

640 Octavia is a Wyoming limited liability company, managed by Edward Kountze, that owns the real property at 640 Octavia Street in San Francisco, which has four residential units. Kountze lives in a unit in the building with his partner. When 640 Octavia became the owner of the property in 2017, Pieper and Montoya (tenants) lived in unit 3.

1

In January 2020, 640 Octavia served tenants with a "Notice of Termination of Tenancy" (NOT). The NOT stated that the landlord was terminating tenancy and 640 Octavia was withdrawing the property "from the residential rental market" pursuant to the Ellis Act and section 37.9A of the San Francisco Residential Rent Stabilization and Arbitration Ordinance (S.F. Admin. Code, ch. 37) (Rent Ordinance). The NOT continued: "This notice (the 'Notice') is what is commonly referred to as an 'eviction notice'." The landlord also executed and filed with the San Francisco Residential Rent Stabilization and Arbitration Board (Rent Board) a "Notice of Intent to Withdraw Residential Units from the Rental Market" (NOITW). 640 Octavia recorded the NOITW with the county recorder.

The Ellis Act provides, with certain exceptions not relevant here, that no statute, ordinance, regulation, or administrative action shall "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease." (Gov. Code, § 7060, subd. (a).) "A landlord who complies with the Ellis Act may therefore go out of the residential rental business by withdrawing the rental property from the market." (*Drouet v. Superior Court* (2003) 31 Cal.4th 583, 587 (*Drouet*).) Section 37.9A, subdivision (e) of the Rent Ordinance requires the landlord make relocation payments to tenants who lose their residence when it is removed from the rental market. The Rent Board publishes updates of the relocation amount due per tenant. The landlord must pay half of the relocation payment when it serves the NOT and pay the other half when the tenant vacates the unit. When 640 Octavia served the NOT, it owed the tenants relocation payments of $6,985.23.

Counsel for the landlord testified by declaration that she sent the NOT to the tenants' address and enclosed checks for $3,492.62 for each of them.

She explained the postal service "returned to sender" the NOT and checks due to the overflow of mail in the tenants' mailbox.

The landlord and tenants had been engaged in protracted litigation, including in a case brought by the landlord in federal court based on diversity jurisdiction, and so on March 11, 2020, counsel for 640 Octavia sent the NOT and checks to tenants' counsel. Counsel explained the NOT and checks had been returned by the postal service. On March 20, the tenants' counsel responded that he had been "recently retained" in connection with the correspondence from 640 Octavia, notwithstanding his representation of them in ongoing litigation against the landlord, but was "not authorized to accept or receive" the relocation payments and therefore they were "rejected." He also stated that his clients were exercising their right to extend occupancy of the rental unit until at least February 3, 2021, based on the tenants' disabilities.[1]

640 Octavia filed this unlawful detainer action on February 11, 2021. It alleged that 640 Octavia had withdrawn the property from the rental market under the Ellis Act and complied with all applicable provisions of the Rent Ordinance, but the tenants had failed to vacate and continued in possession of the premises. The tenants demurred, and the trial court overruled the demurrer. The tenants then answered the complaint, asserting various affirmative defenses, including that 640 Octavia had bad faith,

_____

[1] Section 37.9A, subdivision (f)(3) of the Rent Ordinance describes the effective date of withdrawal of rental units under the Ellis Act, and that if a tenant is disabled as defined in Government Code section 12955.3 and has lived in their unit for at least a year prior to the filing of the NOITW, the effective date "shall be extended to one year after the date of delivery of that notice to the Rent Board" upon written notice of entitlement to the landlord. The landlord did not challenge the tenants' request to extend their tenancy under this provision.

ulterior, and improper reasons for seeking to recover possession of the premises.

640 Octavia moved for summary judgment. It submitted, among other things, the NOT, NOITW, and memorandum of the NOITW. Kountze declared that, since at least January 2019, he had a "bona fide intent to withdraw the Property from the residential rental market." He stated that when he purchased the property in 2016, he had "intended to use it for my family—one unit for myself, one unit for my partner, and one unit for my adult daughter, with a shared family office," and now "would like to provide her a place to call home in the Bay Area where she can focus on her [graduate] studies." In November 2019, 640 Octavia signed license agreements for non-exclusive occupancy and use of unit 1 (with Daniel Amarel) and unit 2 (with Kountze and his partner). Unit 4 was vacant. Kountze declared that, other than the tenants in unit 3, none of the other units were occupied.

The tenants opposed summary judgment. They submitted, among other things, notices to quit or cure sent by 640 Octavia to them in 2017 and 2018, reports of private investigations conducted on the property in 2017, police reports from 2017 to 2019, screenshots from surveillance video in 2018 purporting to show Kountze making a neck "slashing" motion into the camera, text messages between Kountze and Amarel from 2018 and 2019, and documents from the unsuccessful federal action initiated by 640 Octavia against them. 640 Octavia objected to this evidence on various grounds, including relevance.

The trial court granted summary judgment for 640 Octavia and against the tenants. It sustained 640 Octavia's relevance objections to the evidence

summarized above.[2]  The court concluded that 640 Octavia "has proven its compliance with all applicable state and local requirements, and has established its bona fide intent to withdraw the subject property from rent or lease."  Specifically, it determined that 640 Octavia had the right to seek possession of the premises because it complied with the Ellis Act and applicable provisions of the Rent Ordinance in terminating the tenancies.  It also determined that 640 Octavia's "dominant motive in terminating this tenancy" was to "comply with the Ellis Act and withdraw the Property and the Premises from the residential rental market."

The trial court concluded that 640 Octavia "established all elements of an Ellis Act unlawful detainer," and the tenants had "failed to create a triable issue as to any material fact regarding elements of the cause of action or to any affirmative defense."  The court explained that the tenants' affirmative defenses could not overcome 640 Octavia's prima facie case, were not defenses as a matter of law, or lacked sufficient admissible evidence to create a triable issue of fact.  The court entered judgment in favor of 640 Octavia for restitution of possession of unit 3.  The tenants appeal.

## DISCUSSION

The tenants, Pieper and Montoya, argue that they presented evidence of triable issues of material fact on 640 Octavia's claim.  Specifically, the tenants rely on evidence they say the trial court either "ignored" by sustaining 640 Octavia's relevancy objections, or "improperly discounted" amongst the evidence it did consider.  The tenants challenge both the trial court's evidentiary rulings and its ultimate determination that the tenants

---

[2] The trial court also sustained 640 Octavia's objections to the characterization of a 2017 "false" police report as speculative opinion, and to defendants' submission of the March 11, 2020 letter without enclosures as lacking foundation.

5

failed to raise any triable issue of material fact.

## I.  Waiver

640 Octavia preliminarily responds that the tenants waived their evidentiary arguments, and that we need not consider evidence excluded by the trial court.  We disagree.  " 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed.' " (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) 640 Octavia contends that the tenants include only "cursory statements" about evidentiary error, and "make no effort to argue the trial court abused its discretion with respect to these rulings."

We agree that the tenants' opening brief should have contained clearer argument and authority regarding the excluded evidence and sustained objections.  (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451, fn. 12 (*Pipitone*).)  But, 640 Octavia acknowledged in its respondents' brief that the tenants rely on evidence excluded by the trial court in making this appeal.  Given that 640 Octavia had notice and opportunity to address these evidentiary arguments and, as explained below, the applicable standard of review is an open question, we deem the arguments to be properly before us as "part and parcel" of this appeal.  (*Id.* at p. 1451, fn. 12.)

## II.  Standards of Review

The typically well-established standard of review on a trial court's order granting summary judgment has a wrinkle in this case as a result of the trial court's evidentiary rulings.  Summary judgment is generally appropriate "if all the papers submitted show that there is no triable issue as

to any material fact" and that it "is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  A plaintiff moving for summary judgment bears the initial burden of "showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action."  (*Id.*, subd. (p)(1).) Once the plaintiff has met that burden, the burden shifts to the defendant to "set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto."  (*Ibid.*)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We typically review the record de novo to independently determine whether triable issues of material fact exist.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)  The appellant, however, still "has the burden of showing error, even if he did not bear the burden in the trial court."  (*Claudio v. Regents of the University of California, supra,* 134 Cal.App.4th at p. 230.)

The parties disagree about whether we review the trial court's rulings on 640 Octavia's evidentiary objections de novo or for abuse of discretion.  In determining whether there is any triable issue of material fact, we "consider all the evidence set forth in the moving and opposition papers except that to which objections have been made and *properly* sustained."  (*Pipitone, supra,* 244 Cal.App.4th at p. 1452.)  "Only *admissible evidence* is liberally construed

in deciding whether there is a triable issue." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.)

The standard of review in cases like this one remains an open question. Our Supreme Court identified, but did not resolve, the issue in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512 (*Reid*). There, the trial court had declined to rule on Google's written evidentiary objections to summary judgment evidence and the Court of Appeal decided the merits of those objections raised on appeal. (*Id.* at pp. 522, 525.) Google claimed the appellate court had " 'breache[d] the review limitations placed upon it by the abuse of discretion standard,' " while Reid argued that the de novo standard applied. (*Id.* at p. 535.) The court rejected Google's request for remand, as Google had "expressly invited the Court of Appeal to address its evidentiary objections" and remand was unnecessary. (*Id.* at p. 535.) The court concluded: "Thus, we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Ibid.*)

The weight of authority before and after *Reid* supports application of the abuse of discretion standard (e.g., *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226; *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946 ["We agree with the majority of courts which have held that the abuse of discretion standard applies"]), but courts have concluded that de novo review is appropriate where written evidentiary objections on summary judgment are based on questions of law. (*Pipitone, supra*, 244 Cal.App.4th at p. 1451; see also *Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 817 [electing to employ de novo standard of review given evidentiary ruling rested on legal premises].) Like *Reid*, however, we need not resolve any debate because, as described below, we conclude there

8

was no reversible error in the challenged evidentiary rulings under either standard.

With this framework in mind, we turn to the tenants' specific arguments regarding the triable issues of material fact they claim to have shown here. They contend the trial court erred in concluding that 640 Octavia: (1) had a bona fide intent to exit the rental market; (2) served the NOT on all known tenants at the property; and (3) complied with the Ellis Act and Rent Ordinance in its service of the relocation payment checks. We address each alleged error in turn.

### III. Bona Fide Intent to Exit Rental Market

The tenants argue that, as a result of erroneous evidentiary rulings, the trial court incorrectly concluded that 640 Octavia had a bona fide intent to remove the property from the rental market. The tenants' argument fails here as a result of the law reconciling a retaliatory eviction defense with an unlawful detainer claim in the context of the Ellis Act.

The defense of retaliatory eviction is codified at Civil Code section 1942.5. (*Drouet, supra*, 31 Cal.4th at p. 587.) This defense bars a landlord from recovering possession in an unlawful detainer action in retaliation against a tenant because of his or her exercise of rights or complaints made regarding tenantability. (*Ibid.*) Here, the tenants alleged that 640 Octavia sought to evict them in retaliation for the ongoing conflicts between Kountze, Pieper, and Montoya. The Ellis Act allows a landlord to respond to a retaliatory eviction defense by proving the landlord had a bona fide intent to exit the rental market. The California Supreme Court explained in *Drouet*: "where a landlord has complied with the Ellis Act and has instituted an action for unlawful detainer, and the tenant has asserted the statutory defense of retaliatory eviction, the landlord may overcome the defense by

9

demonstrating a bona fide intent to withdraw the property from the market. If the tenant controverts the landlord's bona fide intent to withdraw the property, the landlord has the burden to establish its truth at the hearing by a preponderance of the evidence." (*Drouet*, at pp. 599–560.)

The trial court sustained 640 Octavia's objections to three categories of evidence as irrelevant. The tenants contend that these evidentiary rulings were an abuse of discretion or otherwise reversable error, because the evidence relates to 640 Octavia's lack of intent to take its property off the rental market.

We agree with the trial court. Evidence Code section 352 vests the trial court with discretion to "balance the probative value of the offered evidence against its potential of prejudice, undue consumption of time, and confusion." (*Kessler v. Gray* (1978) 77 Cal.App.3d 284, 291.) "That balancing process requires consideration of the relationship between the evidence and the relevant inferences to be drawn from it, whether the evidence is relevant to the main or only a collateral issue, and the necessity of the evidence to the proponent's case as well as the reasons recited in [Evidence Code] section 352 for exclusion." (*Ibid.*)

First, the tenants cite excluded evidence related to 640 Octavia's federal action against Pieper, which was based on diversity jurisdiction (since 640 Octavia is a Wyoming limited liability company). In opposition to the summary judgment motion in this case, the tenants submitted 640 Octavia's February 2018 complaint from the federal case, which included unlawful detainer, breach of contract, and private nuisance claims. The complaint alleged 640 Octavia could not rent other units in the building as a result of Pieper's allegedly disruptive conduct. A jury found against 640 Octavia, and 640 Octavia then appealed that result to the United States Court of Appeals

10

for the Ninth Circuit. On summary judgment in this case, the tenants also submitted the Ninth Circuit's decision affirming the federal judgment after the jury verdict against 640 Octavia. The tenants argue that this evidence shows that 640 Octavia did not have a bona fide intent to exit the rental market, since the company maintained the federal case even after it served the NOT in January 2020, and after Kountze's declaration said he had formed the intent to take the property off the rental market.

The tenants' argument has a number of flaws. The judgment in the federal action was entered nine months before the NOT was served. Moreover, contrary to the tenants' suggestion, the federal action and subsequent appeal do not bear on whether 640 Octavia intended to continue in or re-enter the rental market. Rather, in the federal case 640 Octavia sought to evict Pieper and recover lost rent it alleged to have suffered because of Pieper's conduct. Intent to recover lost rent is not the same as intent to continue renting or re-rent. 640 Octavia also observes that the federal case could be viewed as evidence of its bona fide intent to exit the rental market because it reflects the landlord's exasperation with the market. The trial court did not err in excluding evidence about the federal case for purposes of the summary judgment motion.

Second, the tenants contend that Kountze's declaration in support of his company's summary judgment motion—stating he had a bona fide intent to withdraw as of January 2019, and that when he purchased the property in 2016, he intended to use it for his family—contradicted his own testimony in the federal action. We again disagree. The transcript reflects the following testimony on cross-examination:

"**Q.** And beginning on May 26, 2019, you won't be able, under this notice, to rent the building to any tenants; correct?

"**A.** Correct.

11

"**Q.** And that was your idea to begin with when you discussed the situation with the other tenants of the building back in 2015 when the building was for sale?

"**A.** Incorrect. That's false.

"**Q.** Okay. You told them that your idea then was to take the building off the market; correct?

"**A.** No. I don't know what I told them. I said a 501(c)(3). It is not an Ellis Act at all."

The trial court was justifiably not persuaded that Kountze's discussion of his intent with "other tenants" in 2015 was relevant to the question of whether, five years later, he had a bona fide intent to withdraw his company's property from the rental market. Rather, the testimony is consistent with Kountze's declaration that 640 Octavia intended to take the property off the rental market since January 2019. Nor does Kountze's uncertainty about what he told other tenants when the building was for sale back in 2015 contradict his purported intent to use it for family when he purchased the property in 2016.

Third, the tenants cite police reports, private investigation reports, surveillance video screenshots, and notices to cure or quit, which were excluded by the trial court on summary judgment, as evidence of 640 Octavia's "harassing and retaliatory conduct" towards the tenants. The trial court did not commit error in excluding this evidence as irrelevant given the law concerning retaliatory eviction in the context of the Ellis Act. The *Drouet* decision is instructive here. As in this case, the landlord and tenants in *Drouet* had a long history of conflict. (*Drouet*, *supra*, 31 Cal.4th at p. 588.) The tenants in *Drouet* had alleged, for example, that the landlord illegally attempted to raise the rent, overcharged for utilities, refused to pay interest on security deposits, and violated the lease by refusing to permit one of the

12

tenants to have a roommate. (*Ibid.*) When the tenants discovered that the landlord had failed to pay his share of the garbage bill, they told him they planned to deduct this amount from their rent. (*Ibid.*) Around the same time, the tenants notified the landlord of a leaking sewage drain and shower wall. (*Ibid.*) A few months after the tenants requested those repairs, the landlord served tenants with a notice he was withdrawing his property from the rental market pursuant to the Ellis Act. (*Ibid.*)

The court in *Drouet* rejected the contention that the landlord "should be compelled to prove not merely that he has a bona fide intent to go out of business but *also* that this bona fide intent was not motivated by the tenant's exercise of rights" under Civil Code section 1942.5. (*Drouet, supra*, 31 Cal.4th at p. 596.) The court explained that its construction of the statute "permits a landlord to go out of business and evict the tenants—even if the landlord has a retaliatory motive—so long as the landlord *also* has the bona fide intent to go out of business." (*Id.* at p. 597.) It further reasoned that any incentive for "sham Ellis Act evictions" (a landlord who may "*secretly* intend to re-rent" after evicting an existing tenant) has been mitigated by San Francisco ordinances "strictly limiting the landlord's right to re-rent the withdrawn property to others, to raise the rent, or to sell the property unencumbered by these limitations."[3] (*Drouet*, at p. 598.)

There is no dispute that the parties in this case have been engaged in ongoing conflict for many years. The trial court appropriately excluded evidence reflective of that longstanding conflict as irrelevant. At most, the

---

[3] Section 37.9A of the Rent Ordinance, for example, provides that if a unit withdrawn from the rental market is offered for rent or lease within 10 years of the withdrawal date, the rent cannot be increased for the next five years, the displaced tenant has the first right of refusal, and in certain circumstances an owner may be liable for damages to the displaced tenant.

evidence shows that 640 Octavia's desire to exit the rental business was impacted by its protracted fights with the tenants. The *Drouet* decision, however, makes clear that such evidence, without more, does not raise a triable issue regarding 640 Octavia's bona fide intent to withdraw from the rental market. (*Drouet, supra*, 31 Cal.4th at p. 597.) Nothing in the police reports, investigation reports, surveillance video, or prior notices, evidences any intent to continue in or re-enter the rental market.

The tenants' reliance on *Coyne v. De Leo* (2018) 26 Cal.App.5th 801 (*Coyne*) does not help them. In *Coyne*, a tenant sought to introduce evidence that his landlord had sold a "sham ownership interest" in the property to another tenant, thereby allowing that tenant to remain while the landlord professed his intent to withdraw the property from the rental market. (*Id.* at p. 812.) The tenant submitted documents showing that the landlord had deeded a 10 percent interest in the property to the other tenant a few months before the notice of intent to withdraw was filed. (*Ibid.*) The purchase agreement indicated that the sale was for $500,000, but the other tenant did not make any down payment and her purchase was entirely "seller financed" by the landlord. (*Ibid.*) The loan required monthly payments of $1,583, only 17 dollars less than what she had been paying in rent. (*Ibid.*) The *Coyne* decision concluded that the trial court erred in excluding this evidence, as relevant to whether the landlord had a bona fide intent to withdraw or whether the purchase by the other tenant was a sham and did not, in substance, change their landlord-tenant relationship. (*Id.* at p. 823.) Here, unlike *Coyne*, the tenants only proffer evidence of past conflicts with 640 Octavia to contend that it had a retaliatory motive in deciding to evict them. There is nothing that contradicts 640 Octavia's stated intent, however motivated, to withdraw from the landlord business.

In sum, we see no error in the trial court's decision to exclude evidence of the parties' protracted negative interactions here. We conclude that the trial court did not err in determining that the tenants failed to raise a triable issue of material fact as to 640 Octavia's bona fide intent to exit the rental market.[4]

## IV. Service of All Tenants

The tenants argue that they have shown a triable issue of material fact as to whether 640 Octavia served "all tenants" with the NOT. The tenant-defendants received the NOT. According to the tenants, however, the evidence excluded by the trial court suggests that Amarel, Kountze, and his partner—not defendants nor subject to any other eviction proceedings—were also tenants in the building. The tenants thus argue that 640 Octavia needed to present evidence that it also served these three individuals with the NOT. 640 Octavia responds that the written license agreements it submitted on summary judgment show Amarel, Kountze, and his partner were "licensees" rather than tenants, and that there was no need to serve any of them with the NOT.

Section 37.2, subdivision (t) of the Rent Ordinance defines a "tenant" as "[a] person entitled by written or oral agreement, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the exclusion of others." A tenant must also pay rent. (*Danger Panda, LLC v. Launiu* (2017) 10 Cal.App.5th 502, 513 ["an occupant of a rental unit who does not have the right to exclusive possession and the concomitant obligation to pay rent does not meet the generally accepted common law definition of a tenant. Nor does he or she fall within the section 37.2(t)

_____

[4] Given this conclusion, we reject the tenants' additional argument that they should be permitted to argue their affirmative defenses at trial because they have shown a triable issue of fact as to 640 Octavia's bona fide intent.

15

definition of a tenant quoted above"].)  "Rent may not necessarily be a single specific dollar amount. It consists even of services."  (*Rossetto v. Varros*s (2001) 90 Cal.App.4th Supp. 1, 5.)  A licensee, in contrast, does not have exclusive possession of the property.  (See *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1040 ["One key characteristic that distinguishes a tenancy from a mere license is the right to exclusive possession as against the whole world, including the landowner"]; *Rossetto*, at p. 5 [same].)

The tenants argue that text messages between Amarel and Kountze excluded by the trial court show that Amarel was paying "rent" by providing various services to Kountze, like painting, giving keys to Kountze's guests, and requesting quotes for garage door repairs.  We disagree with the trial court that this evidence was irrelevant to the issue of whether Amarel was a tenant, but conclude any error on this evidentiary ruling was harmless. (*Bader v. Johnson & Johnson* (2022) 86 Cal.App.5th 1094, 1111 [evidentiary error reviewed for prejudice and reversible "if there is a reasonably probability, or a reasonable chance, appellant would have obtained a more favorable result"].)

The excluded messages from 2018 and 2019 do not show that Amarel was providing services as "rent" at the time the NOT was served in January 2020.  Further, there is nothing in the messages showing Amarel had *exclusive possession* of any unit at the property.  As explained above, exclusive possession is necessary for an individual to satisfy the definition of a "tenant." (*Danger Panda, LLC v. Launiu, supra*, 10 Cal.App.5th at p. 513.) Without such evidence, the tenants have not shown a triable issue on the

tenancy of others who did not receive the NOT (and who were not being evicted).[5]

We are not persuaded by the tenants' argument that Amarel's deposition testimony in this case—evidence to which 640 Octavia did not object—showed Amarel had exclusive possession of unit 1. Amarel testified that, after October 2018, he spent most of his nights staying at the unit. He testified that Kountze explained "very early on" that he was "getting out of the rental business" and "couldn't take rent," but Amarel could stay as long as he needed. Amarel also testified, however, that multiple guests of Kountze stayed in unit 1 when Amarel was there. This testimony contradicts any suggestion that Amarel had exclusive possession of the unit.

Finally, the tenants contend that the license agreement between 640 Octavia and Amarel—evidence submitted by 640 Octavia—is a "complete sham" because it was signed in November 2019, one year after he moved in and three months before the NOT was served. Even accepting this premise, it does not raise a triable issue of material fact that Amarel was a *tenant*. As explained above, there is no evidence that shows tenancy here. If anything,

_____

[5] The tenants also cite *Belmont County Water District v. State of California* (1976) 65 Cal.App.3d 13 (*Belmont*) for their proposition that "estoppel may apply to make a license irrevocable and have it treated as a tenancy under law." The *Belmont* case involved a revocable permit for construction of a water supply pipeline. (*Id.* at p. 16.) It explained that, under certain circumstances, a license may become irrevocable when the licensee has made substantial expenditures and constructed valuable improvements in reliance upon the licensor's representations, as it would be unjust to permit cancellation without first compensating the licensee for its losses. (*Id.* at p. 17.) The tenants offer no authority that this principle from *Belmont* applies to a license of a residential unit, nor any evidence or argument that Amarel made "substantial expenditures" through his services to Kountze. (*Ibid.*)

the tenants' challenge to the license agreement raises the question of whether Amarel was even a licensee.

The tenants repeat similar arguments with respect to Kountze and his partner: that Kountze's testimony about maintenance he conducted as the manager of 640 Octavia shows he was a tenant, and that the license agreement he and his partner signed was a sham. But the tenants offer no authority for their position that, in performing services as the manager of 640 Octavia, Kountze could be considered a tenant required to be served with the NOT. (Cf. *Santa Monica Rent Control Bd. v. Bluvshtein* (1991) 230 Cal.App.3d 308, 317 [agreement for maintenance payments by owner occupants was not lease].) Nor do the tenants present any argument or authority that Kountze's partner performed such services. Without showing any triable issue regarding tenancy, the tenants' argument regarding the license agreement again fails because it only raises the question of whether or not Kountze and his partner were licensees.

We conclude that the trial court did not err in determining that the tenants had failed to raise a triable issue of material fact as to 640 Octavia's service of the NOT as required under the Ellis Act.

### V. Service of Relocation Payments

The tenants argue that they have shown a triable issue of material fact as to whether 640 Octavia complied with all of its statutory requirements by providing the first half of the relocation payments required by the Ellis Act with the NOT. 640 Octavia responds that it complied with its Ellis Act obligations.

18

Section 37.9A, former subdivision (e)(3)(A) of the Rent Ordinance provided,[6] in relevant part, that one-half of the relocation benefit "shall be paid at the time of the service of the notice of termination of tenancy," and the other half paid "when the Eligible Tenant vacates the unit." The tenants argue that we should interpret this statute to mean that the first payment must be *received* and *completed* by the time the NOT is served.

The tenants' proposed statutory construction is not the right one. "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387.)

Section 37.9A, former subdivision (e)(3)(A) of the Rent Ordinance sets forth the timing of when both portions of the relocation payment are to be made: the first half "at the time of the service of the notice of termination of tenancy," and the other half paid "when the Eligible Tenant vacates the unit." The plain language of the phrase "at the time of the service of the notice of termination of tenancy" allows for concurrent service of the first

___

[6] Section 37.9A, subdivision (e)(3)(A) was amended on May 17, 2022, and now appears as subdivision (e)(1)(A).

19

payment check and NOT.  Such a construction is consistent with cases like *Johnson v. City and County of San Francisco* (2006) 137 Cal.App.4th 7, which accepted provision of the payment check enclosed with the termination notice as consistent with section 37.9A, subdivision (e) and the Ellis Act.  (*Johnson*, at p. 15 & fn. 5.)  If the Legislature had intended the meaning the tenants suggest, it would have used phrasing like "by the time" instead.

We conclude that the trial court did not err in determining that defendants had failed to raise a triable issue of material fact as to 640 Octavia's compliance with the Ellis Act and Rent Ordinance in its payment of the relocation payments.

## DISPOSITION

The judgment is affirmed.  640 Octavia is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Markman, J.*

We concur:

_____
Stewart, P.J.


_____
Richman, J.

*640 Octavia, LLC. v. Pieper et al.* (A164531)


&ast; Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| 640 OCTAVIA, LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KARL HEINZ PIEPER et al.,<br><br>    Defendants and Appellants. | A164531<br><br>(San Francisco County<br>Super. Ct. No. CUD-21-667662)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

**THE COURT:**

    The opinion in the above-entitled matter, filed on June, 28, 2023, was not certified for publication. For good cause, request for publication is granted.

    Pursuant to California Rules of Court, rule 8.1105, the opinion in the above-entitled matter is ordered certified for publication in the Official Reports.


Dated: _____               _____

                                         Stewart, P.J.

Trial Court:                    San Francisco County Superior Court

Trial Judge:                    Hon. Ronald E. Quidachay

Attorneys for Defendants        Peretz & Associates
And Appellants:                 Yosef Peretz
                                David Garibaldi


Attorneys for Plaintiff         Zacks, Freedman & Patterson, PC
and Respondent:                 Scott A. Freedman
                                Emily L. Brough